HARDY, Judge.
This is a suit by the members of the partnership of Glover & Barney, real estate brokers, for a commission alleged to be due by defendant as the result of services rendered in connection with a sale of certain property belonging to defendant.
After trial there was judgment in favor of defendant rejecting plaintiffs’ demands, from which plaintiffs have appealed.
The facts show that defendant owned a tract of land located in DeSoto Parish, Louisiana, and at some time during the summer of 1948, she was approached by one of the plaintiff firm with reference to the sale of her place, at which time she was not interested in selling. However, shortly thereafter, about the first of September, defendant authorized plaintiffs to list the property at a price of $17,750. The listing agreement was oral and the record before us does not establish any of its terms or conditions aside from the fixing of the above price.
For reasons which are well established by the record, defendant notified plaintiff some time during the latter part of September, 1948, that she was no longer interested in selling the property and, accordingly, *916 that it was withdrawn from the market. The date of defendant’s termination of her oral listing agreement is uncertain, defendant contending that it was made about September 22nd, while plaintiffs claim that the attempt to withdraw from the agreement was not notified to them until some week or so later.
In any event, it is conclusively established that defendant, surrendering hopes of making a satisfactory sale or lease of the property, entered into negotiations with one Ralph C. Miller, which were consummated by a trade or exchange, in which she conveyed her DeSoto Parish property to Miller and received in return from Miller a certain garage apartment property in the city of Shreveport. The consideration recited in the respective deeds was $13,087, and it is upon this amount that plaintiffs seek to recover a commission of 5%.
The facts as found by tire District Court, which are amply supported by the record, inescapably lead to the conclusion that the negotiations between Miller and the defendant were neither initiated nor assisted by plaintiffs. Miller had been in touch with the defendant for some time and it was the defendant herself who, on one occasion, requested the assistance of plaintiffs in attempting to conclude a sale to Miller, at which time plaintiffs advised defendant that Miller was not able to purchase the property.
Plaintiffs’ petition alleges, inter alia, that they contacted Miller, made arrangements to show the property to him; that Miller visited and inspected the farm, and made an offer of trade, which in turn was submitted to defendant and refused. These allegations are stoutly denied by defendant and the preponderance of the testimony fails to establish them as fact. On the contrary, it is established that defendant was in contact with Miller before plaintiffs ever entered upon the scene; that all negotiations with Miller were conducted directly with defendant and that the trade between defendant and Miller was agreed upon and consummated after defendant had cancelled the listing of the property with plaintiffs.
It is true that plaintiffs advertised the property and made some sporadic efforts to interest various parties, but without success. But it appears to be definitely established by a preponderance of the testimony that plaintiffs’ efforts resulted in no service of any value to defendant. Plaintiffs neither discovered nor procured a prospect who was ready, able and willing to buy. Despite the fact that defendant specifically requested them to assist in negotiations with Miller, they apparently neglected to press their activities to this end, and, certainly, they had no part in bringing Miller and the defendant together on common ground.
It is certain, under the facts here developed, that all contractual relationships between plaintiffs and defendant were terminated prior to the negotiations that finally culminated in the exchange of property between defendant and Miller.
We have carefully examined the authorities urged by plaintiffs’ counsel in support of the contentions made, but find no rule that would sustain plaintiffs’ position under the ascertained facts of this case.
It is contended that defendant's action in breaking off relations without allowing sufficient time within which plaintiffs might procure the consummation of a sale is a factor to be considered. We do not find it so, inasmuch as there is not the slightest indication before us as to any time element in the so-called contract between plaintiffs and defendant.
It is further urged that under an “exclusive listing is itself in doubt under the recover a commission. The fact of an exclusive listing is itself in doubt under the testimony in this case, but, regardless of this point, there is not the slightest showing in the record as to any provisions comprehended in the contract which would sustain this contention.
Finally, we observe that there is not the slightest showing of any bad faith or collusion between defendant and Miller. This point was particularly emphasized by the learned Judge of the District Court in his written opinion on plaintiffs’ application *917 ior rehearing in these words: "As we have stated above, there is no evidence of bad faith * * *. With reference to bad faith, we will state that during the trial and through argument, it never occurred to us that there was any bad faith on the part of defendant throughout the relationship between the partners. In fact, we were very much impressed with the straightforward manner in which Mrs. Griffin furnished the facts in the case.”
In the absence of any proof whatsoever of the terms and provisions of the contract alleged upon which would support plaintiffs’ claims to the right of recovery of a commission, there appears to us to be nothing in the instant case upon which the right to such recovery might be predicated.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.